EXHIBIT

**C**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |
|---|---|
| ROBERT SIFF<br><br>               Plaintiff,<br><br>vs.<br><br>DAVID SHABSELS, MICHAEL SHABSELS,<br>BELGRADE LAKES SUMMER CAMPS LLC,<br>and DANA MILLER<br><br>               Defendants. | CIVIL NO. |

## DECLARATION OF MICHAEL SHABSELS IN SUPPORT OF NOTICE OF REMOVAL

I, Michael Shabsels, declare and state as follows:

1. My name is Michael Shabsels. I am over the age of eighteen and competent to make this declaration.

2. I am a manager of Belgrade Lakes Summer Camps LLC (BLSC).

3. BLSC was formerly known as SHABSELSIAFA LLC. A copy of BLSC's Operating Agreement as well as the name change agreement is included as **Exhibit 1** to this declaration.

4. BLSC's current membership consists of two business entities: SIMAD Holdings Ltd. (SIMAD), a British Virgin Islands company, and DAMIS Holdings, LLC (DAMIS), a New York limited liability company. *See* **Exhibit 1** at 19 (Exhibit 1 to Operating Agreement).

5. SIMAD is owned by myself and David Shabsels, with each of us owning 50% of the shares of the company. A copy of the Register of Members is attached to this Declaration as **Exhibit 2**.

1

6.      DAMIS is likewise held 50-50 between myself and David. A copy of DAMIS's

Operating Agreement, Exhibit 1 to which contains the membership listing, is attached to this

Declaration as **Exhibit 3**.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on: April 17, 2026                              ___/s/ Michael Shabsels_____

                                                                                Michael Shabsels

**EXHIBIT 1**

# OPERATING AGREEMENT
## OF
### SHABSELSIAFA LLC

This Operating Agreement ("Agreement") is made as of ) ~~March~~ *April* 8, 2011, by the undersigned party or parties (individually and together, the "Members") pursuant to the provisions of the Maine Limited Liability Company Law.

**WHEREAS,** the Members have formed a limited liability company pursuant to the Maine Limited Liability Company Law.

**WHEREAS,** the Members desire to adopt this Agreement pursuant to the Maine Limited Liability Company Law.

**WHEREAS,** each Member represents that it has sufficient right and authority, without breaching any provision of law or contract to execute this Agreement and is not acting on behalf of any undisclosed or partially disclosed principal by such action;

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Members hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the following terms shall have the following meanings:

**Section** 1.1    <u>Agreement</u>.    This Operating Agreement, dated as of ~~March~~ *April* 8, 2011.

**Section** 1.2 <u>Assignee</u>. A transferee of some or all of the Units of a Member, who has not been admitted as a Substitute Member.

**Section 1.3**    <u>Capital Contribution</u>. As defined in § 4.2 of the Agreement.

**Section** 1.4 <u>Code</u>. The Internal Revenue Code of 1986, as amended from time to time.

**Section** 1.5 <u>Company</u>. SHABSELSIAFA LLC a limited liability formed under the laws of the State of Maine, and any successor limited liability company.

**Section** 1.6    <u>Company Property</u>. Any property owned by the Company.

1

**Section 1.7** Department of State. Department of State of the State of Maine.

**Section 1.8** Disassociation. The bankruptcy, death, distribution, expulsion, incapacity or withdrawal of a Member or the occurrence of any other event, which terminates the continued membership of a Member in the Company.

**Section 1.9** Distribution. A transfer of Company Property to a Member.

**Section 1.10** Initial Members. Those person(s), identified in Exhibit 1 attached hereto and made a part hereto by this reference, who have executed this Agreement.

**Section 1.11** Majority. A number of amount exceeding fifty percent (50%).

**Section 1.12** Managing Members. The natural persons and/or entities listed on the attached Schedule 1 have been given exclusive authority to manage, control and operate the Company as Managing Members.

**Section 1.13** Members. Any parties holding Units representing limited liability company interests in the Company, including Initial Members, Substitute Members and Additional Members.

**Section 1.14** Maine Act. The Maine Limited Liability Company Law.

**Section 1.15** Substitute Member. An Assignee of all or a portion of a Member's Units, who has become a Member pursuant to Article 13.

**Section 1.16** Units(s). An interest, or interests, in the Company held by a Member.

## ARTICLE 2
## ORGANIZATION and TERM

**Section 2.1** Formation. The Members hereby form the Company under and pursuant to the provisions of the Maine Act and upon the terms and conditions set forth in this Agreement. The rights and liabilities of the Members shall be as provided under the Maine Act, the Articles and this Agreement. The fact that the Articles are on file in the Maine Department of State shall be conclusive evidence of the formation of the Company as a limited liability company. Simultaneously with the execution of this Agreement and the formation of the Company, each of the Members shall be admitted as Members of the Company.

**Section 2.2** Name. The Company's name shall be:

### SHABSELSIAFA LLC

The Company shall cause appropriate trade name and like statements to be filed and published under the name set forth in this section 2.2, or such other name as the Company may have or use in any state or jurisdiction from time to time.

**Section** 2.3 Term. The term of the Company shall commence on the date hereof and shall continue in full force and effect unless sooner terminated in accordance herewith or the Maine Act.

**Section** 2.4 Principal Place of Business. The principal place of business of the Company shall be c/o Michael Shabsels, 444 E 58th Street, #3C, New York NY 10022. Upon notice to the Members, the Company may change the location of its principal place of business. The following items shall at all times be maintained at the Company's principal office:

    (a)    a copy of this Agreement;

    (b)    a current list of the full name and last known business, residence, or mailing address of each Member, both past and present;

    (c)    a copy of the Articles and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

    (d)    copies of the Company's federal, state and local income tax returns and reports, if any, for the three (3) most recent years;

    (e)    a statement prepared and certified as accurate by the Managing Members which describes the number of Units held by each Member of the Company; and

    (f)    all minutes of meetings of members and any written consents obtained from Members regarding action taken by Members without a meeting.

Such records are subject to inspection and copying at the reasonable request and at the expense of any Member during ordinary business hours.

**ARTICLE 3 PURPOSE and
POWERS OF THE COMPANY**

**Section 3.1** Purpose. The purpose of the Company is (1) to hold an interest in entities operating summer camps and (2) to engage in any lawful business purpose or purposes, except to do in Maine any business for which a statute other than the Maine Act, specifically requires some other business entity or natural person to be formed or used for such purpose.

**Section** 3.2 Powers of the Company. Insofar as the Company is acting in furtherance of the purpose of the Company as set forth in § 3.1, the Company shall have the power and

authority to take in its name all actions necessary, useful or appropriate in the Managing Members' discretion to accomplish its purpose, including, but not limited to, the power to conduct its business, carry on its operation and have and exercise the powers granted by the Maine Act in any state, territory, district or possession of the United States, or in any foreign country which may be necessary or convenient to effect any or all of the purposes for which it is organized.

## ARTICLE 4, CAPITAL
## CONTRIBUTIONS, UNITS, VOTING and CLASSES

**Section 4.1** <u>Initial Members</u>. The names and addresses of the Initial Members are set forth on Exhibit 1 attached hereto.

**Section 4.2** <u>Capital Contributions</u>. The Capital Contribution of each Member is set forth on Exhibit 1. No Member shall be liable under a judgment, decree or order of a court, or in any other manner for a debt, obligation or liability of the Company. Additionally, no Member shall be required to lend any funds to the Company or to pay any contributions, assessments or payments to the Company.

**Section 4.3** <u>Units</u>. A Member's interest in the Company shall be represented by a "Unit" or "Units" held by such Member. Initially, the Company shall have 200 Units outstanding. Each Unit shall represent a pro rata share in profits and losses of the Company. Each Member's respective Units in the Company are set forth on Exhibit 1. Each Member hereby agrees that its interest in the Company and in its Units shall for all purposes be deemed a personal interest and shall not be deemed realty or any interest in the Company's real or personal property or assets of any kind.

**Section 4.4** <u>Withdrawals and Interest</u>. No Member shall have the right to:

(a) withdraw its Capital Contribution;

(b) receive any return or interest on any portion of its Capital Contribution except as otherwise provided herein; or

(c) withdraw from the Company except by transfer of its Units to another party in accordance with Article 13, by resignation, or upon the dissolution of the Company.

**Section 4.5** <u>Return</u>. No Member shall be entitled to the return of all of any part of its Capital Contribution unless and until there remains Company Property after:

(a) all liabilities of the Company (except liabilities to Members on account of their Capital Contributions) have been paid or adequately provided for by the Company;

(b)    all amounts due to Members in respect of their share of profits and other gains have been paid; and

(c)    the Company has been dissolved without reformation in accordance with Article 14 and Articles of Dissolution has been filed with the Department of State of Maine.

**Section 4.6** Voting. By the execution of this Agreement, each Member hereby agrees that its votes, consents and actions pursuant to this Agreement and the Maine Act shall be determined as provided in this Agreement. Unless otherwise specified in this Agreement or under the Maine Act, each Unit shall be entitled to one vote which shall be made by the Managing Members. For actions requiring the approval of the Members, the vote of a Majority of Units shall be required to approve any action. Whenever in this Agreement it is provided that any action may be taken upon a vote of the Members such action may be taken by consent of the Members.

## ARTICLE 5, RIGHTS
## AND POWERS OF MEMBERS

**Section 5.1** Powers of Members. The powers of the Members (as exercisable by the Managing Members) shall include, but not be limited to:

(a)    the right and power to elect and remove a Managing Member as provided in Article 6, except that the Manging Members listed on Schedule 1 shall not be subject to removal;

(b)    the power to amend the Articles and this Agreement, provided that such amendment complies with the Maine Act and Article 7, except the Manging Members listed on Schedule 1 shall remain as Managing Members;

(c)    as provided in Articles 12 and 13, the power to approve or disapprove the admission of a transferee of some or all of a Member's Units as a Substitute Member;

(d)    the power to approve the sale, exchange or other disposition of eighty percent (80%) or more of the Company's assets when such sale, exchange or other disposition is, or is part of, a single transaction or plan; and

(e)    the power to dissolve the Company by the approval of the Members.

**Section 5.2** Transactions Between a Member and the Company. Except as otherwise provided by applicable law, any Member may, but shall not be obligated to, lend money to the

Company, act as surety for the Company and transact other business with the Company and has the same rights and obligations when transacting business with the Company as a person or entity who is not a Member.

**Section 5.3** <u>Nonrestriction of Business Pursuits of Members</u>. This Agreement shall not preclude or limit in any respect the right of any Members to engage in or invest in any business activity. Any permitted activity may be engaged in independently or with other Members. No Member shall have the right, by virtue of this Agreement or the relationship created hereby, to any interest in such other ventures or activities, or to the income or proceeds derived therefrom. The pursuit of such ventures shall not be deemed wrongful or improper and any Member shall have the right to participate in or to recommend to others any investment opportunity.

**Section 5.4** <u>Partition</u>. While the Company remains in effect or is continued, each Member agrees and waives its rights to have any Company Property partitioned, or to file a complaint or to institute any suit, action or proceeding at law or in equity to have any Company Property partitioned, and each Member, on behalf of itself, its successors and its assigns hereby waives any such right.

## ARTICLE 6
## MANAGEMENT

**Section 6.1** <u>Managing Members</u>. The management of the Company's business shall be vested in the Managing Members who are listed on Schedule 1.

**Section 6.2** <u>Term of Office as a Manager</u>. Each Managing Member shall serve until the earliest of:

    (a)    the dissolution, disability or death of such Manager; or

    (b)    the resignation or removal of such Manager.

**Section 6.3** <u>Authority of Members to Bind the Company</u>. The Members hereby agree that only the Managing Members or any agent appointed by the Managing Members shall have the authority to bind the Company.

**Section 6.4** <u>Powers of the Managing Members</u>. The Managing Members shall have the right and authority to take all actions which the Managing Members deem necessary, useful or appropriate for the management and conduct of the Company's business. The powers of the Managing Members may be delegated by the them to one or more of their number or an agent appointed by them from time to time and shall include, but not be limited to, the authority to:

    (a)    sign all instruments, contracts, agreements and other documents on behalf of the Company and executed the same in the name of the Company;

(b)     institute, prosecute and defend any proceeding in the Company's name;

(c)     sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of Company Property;

(d)     conduct the Company's business, establish the Company's offices, and to exercise all the powers of the Company within or without the State of Maine;

(e)     appoint employees and agents of the Company, define their duties and establish their compensation;

(f)     indemnify the Members, Managing Members, Company employees and other agents, or any other person;

(g)     empower an authorized agent with the authority to perform specific duties of the Managing Members;

(h) waive or compromise any liability of a Member of the Company; and

(i) exercise all powers of the Company and do all such lawful acts and things, except if such acts are required or directed to be exercised or done only by the Members, under the Maine Act, the Articles or this Agreement.

**Section 6.5** <u>Appointment of Authorized Agent</u>. The Managing Members may at any time appoint an authorized agent to take specific action on behalf of the Company. The Managing Members may empower the authorized agent with some or all rights and powers provided to the Managing Members.

**Section 6.6** <u>Engagement in Other Business Activities</u>. The Managing Members and any authorized agent may engage in other business activities as permitted by § 5.3 but shall be obliged to devote as much of his or her time to the Company's business as shall be reasonably required in light of the Company's business and objectives.

**Section** 6.7 <u>Compensation of Managing Members and Authorized Agent</u>. Each Managing Member shall be reimbursed for all reasonable out-of-pocket expenses incurred in managing the Company. In addition the Managing Members or an entity affiliated with a Managing Member shall be entitled to receive reasonable compensation for their services on behalf of the Company.

**Section 6.8** <u>Permitted Expenses</u>. Each Managing Member is authorized to spend up to $3,000 for any expense or item necessary for the Company. Any expenses or other items costing above $3,000 shall need the consent of all Managing Members.

**Section 6.9** <u>Standard of Care</u>. The Managing Members and any Authorized Agent shall perform their duties in good faith, in a manner reasonably believed to be in the best interests of the Company, and with such care as an ordinarily prudent person in a similar position would use under similar circumstances. A person who so performs his duties shall not have any liability by reason of obeying, or having been, a Managing Member or the Authorized Agent of the Company. In discharging their duties, the Managing Members and Authorized Agent shall be fully protected in relying in good faith upon the records, statements, information, opinions, or reports of others as provided in the Maine Act.

**Section 6.10** <u>Resignation of Managing Members</u>. A Managing Member may resign from the position of Managing Member at any time upon the earlier of: (i) sixty (60) days written notice to the Members; or (ii) the election and qualification of a replacement Managing Member, by a vote of a Majority of the Members.

**Section 6.11** <u>Vacancies</u>. Any vacancy occurring in the position of Managing Member may be filled by a person elected by a Majority of the Members.

**ARTICLE 7**
**AMENDMENTS and MEETINGS**

**Section 7.1** <u>Amendments</u>. Any amendment to this Agreement shall be adopted and be effective as an amendment hereto if it receives the affirmative vote of a Majority of the Managing Members.

**Section 7.2** <u>Meeting of the Members</u>. Meetings of the Members may be called by the Managing Members. The call shall state the location of the meeting and the nature of the business to be transacted. Notice of any such meeting shall be given to all Members not less than seven (7) days nor more than sixty (60) days prior to the date of such meeting. Members may vote in person or by proxy. Whenever the vote or consent of Members is permitted or required under the Agreement, such vote or consent may be given at a meeting of Members. Except as otherwise expressly provided in the Agreement, a vote of a majority of units, as set forth in § 4.6, shall be required to constitute the act of the Members.

**ARTICLE 8 MEMBER ACCOUNTS,**
**ALLOCATIONS and DISTRIBUTIONS**

**Section 8.1** <u>Maintenance of Member Accounts</u>.

(a) A Member Account shall be established in the Company's books for each Member and transferee in accordance with the rules of Treasury Regulation § 1.704-l(b(2)(iv). Each Member Account shall be:

(i) increased by:

8

(a)    such Member's cash contributions;

(b)    the fair market value of the property contributed by such Member to the Company (net of liabilities securing such contributed property that the Company is considered to assume or take subject to); and

(c)    the amounts allocated to such Member for its share of the income and gain of the Company;

and

(ii)    decreased by:

(a)    the amounts allocated to such Member for such Member's share of the Company's losses and deductions;

(b)    the amount of money distributed to such member by the Company; and

(c)    the fair market value of the property distributed to such Member by the Company (net of liabilities securing such contributing property that such Member is considered to assume or take subject to).

(b) For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Member's Member Account, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes.

Section 8.2 <u>Allocations and Distributions</u>. The net income earned by the Company shall be derived at by deducting all operating expenses from the gross income of the Company, as calculated at the end of each fiscal year. The Company's net income, gains, losses, deductions and credits shall be allocated and distributed pro <u>rata</u> to the Members on account of the Units held by such Members, at a time established by the Managing Members.

Section 8.3 <u>Code Section 754 Election Adjustments</u>. To the extent an adjustment to the tax basis of any Company asset pursuant to Code §754(b) is required to be taken into account in determining Member Accounts, the amount of such adjustment to the Member Accounts shall be treated as an item of gain (if the adjustment increases the basis of the assets) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Member Accounts are required to be adjusted pursuant to such Treasury Regulation section.

## ARTICLE 9 FISCAL
## YEAR, BOOKS AND RECORDS

**Section 9.1** <u>Books of Account and Records</u>. At all times during the term of the Company, the Company shall keep or cause to be kept at the Company's principal office, the items set forth in § 2.4.

**Section 9.2** <u>Fiscal Year</u>. The fiscal year of the Company shall end on December 31 in each year except that the first year of the Company shall be that period (even if less than twelve months) beginning on the date of filing the Articles and ending on the next following December 31 and the final year of the Company shall be that period beginning on the first day of such year and ending on the date of cancellation of the Articles.

## ARTICLE 10 TAX
## MATTERS

**Section 10.1** <u>Tax Matters Manager</u>. A Managing Member shall be designated as a Tax Matters Manager for purposes of federal and state income tax matters. The Tax Matters Manager shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Internal Revenue Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business.

## ARTICLE 11 MEMBERS'
## LIABILITY AND INDEMNITY

**Section 11.1** <u>Members</u>.

(a) No Member shall be liable under a judgment decree or order of a court, or in any other manner, for the debts, liabilities, or obligations of the Company. A Member shall have no liability to any other Member and/or the Company when acting pursuant to its authority granted pursuant this Agreement except to the extent such Member's acts or omissions constituted willful misconduct or gross negligence of such Member.

(b) If a Member has received the return of any part of his Capital Contribution in violation of this Agreement or the Maine Act, such Member is liable to the Company for a period of three (3) years thereafter for the amount of the Capital Contribution wrongfully returned.

(c) If a Member has received the return in whole or in part of his Capital Contribution without violation of this Agreement or the Maine Act, such Member is liable to the Company for a period of three (3) years thereafter for the amount of the returned Capital Contribution, but only to the extent necessary to discharge the liabilities of the Company to those creditors who extended credit to the Company during the period the Capital Contribution was held by the Company.

Any liability of a Member to the Company under this Article 11 can be waived or compromised pursuant to a majority vote of the Managing Members in accordance with §4.6. A Member who is subject to an obligation to repay any Capital Contribution to the Company as required by the Articles or this Agreement, must make such repayment on demand by the Company. No Member shall be liable to the Company, its creditors or any other Member with respect to any amounts paid to such Members profit sharing, loan repayment, interest, salary, wage, rental, royalty, fee or payment for value given which is not paid to such Member as a return of such Member's Capital Contribution.

Section 11.2 <u>Managing Members</u>. The Managing Members do not in any way guarantee the return of any Member's Capital Contribution or a profit for the Members from the Company's business. The Managing Members shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture except if the other business or venture is in competition with the Company. Neither the Company nor any of the Members shall have any rights by virtue of the Articles, this Agreement or any applicable law in or to the other business ventures of the Managing Members or to the income, gains, losses, deductions and credits derived therefrom by the Managing Members.

Section 11.3 <u>Company's Indemnification of Members. Managing Members, Employees or Agents</u>. Except as otherwise specifically provided in this Agreement, the Company shall indemnify its Members, Managing Members, employees and agents to the full extent permitted by law.

Section 11.4 <u>Force Majeure</u>. Notwithstanding anything in this Agreement to the contrary, a Member shall not be liable (except for such Member's obligations to contribute or return its Capital Contribution under the Maine Act or this Agreement) for any loss or damage to Company Property or operations caused by its failure to carry out any of the provisions of the Articles and/or this Agreement as a result of foreseeable or unforeseeable acts of God or incidents resulting from outside forces, whether or not beyond the control of such Member, such as strikes, labor troubles, riots, fires, weather, floods, acts of a public enemy, insurrections, breakdown or failure of machinery, acts, omissions or delays of governmental authorities and governmental laws, rules, regulations or orders.

Section 11.5 <u>Waiver</u>. The failure of any Member to insist upon strict performance of a covenant or condition hereunder shall not be a waiver of its right to demand strict compliance therewith in the future.

## ARTICLE 12
## ADDITIONAL MEMBERS and UNITS

Section 12.1 <u>Additional Units</u>. By approval of the Managing Members, the Company may issue Additional Units by sale or other issuance to existing Members or other persons or entities (separately and together, "Additional Members"). Any such sale or other issuance of Company Units shall be made in accordance with the Articles and this Agreement. As a condition to such issuance, Additional Members acquiring such Units shall execute the Articles, this Agreement and all other documents and instruments as the Company may require and shall become Members as regards such Units upon the date the last of such agreements are executed. The legal fees and costs associated with the preparation and filing of an amendment to the Articles to effectuate such admission, if necessary, and all other documents necessary to continue the Company's right to do business in the jurisdictions in which it is then doing business, shall be borne by the Company.

Section 12.2 <u>Allocations</u>. Additional Units shall not be entitled to any retroactive allocation of the Company's income, gains, losses, deductions, credits or other matters of any kind; provided that Additional Units shall be entitled to their respective share of the Company's income, gains, losses, deductions, credits and other matters of any kind arising under contracts entered into before the effective date of the issuance of any Additional Units to the extent that such income, gains, losses, deductions, credits and other matters of any kind arise after such effective date. The Company's books may be closed at the time Additional Units are issued (as though the Company's tax year had ended) or the Company may credit to the Additional Units *pro rota* allocations of the Company's income, gains, losses, deductions, credits and other matters of any kind for that portion of the Company's fiscal year after the effective date of the issuance of the Additional Units.

## ARTICLE 13
## TRANSFERS

Section 13.1 <u>Transfer Restrictions.</u> Each Member hereby agrees not to, directly or indirectly, sell, transfer, assign, endorse, mortgage, pledge, hypothecate, grant an option to any party to acquire, grant a security interest in or otherwise dispose of or encumber its Units or interest in the Company and any economic benefit therein except with the consent of the Managing Members, which consent may be given or withheld in the sole and absolute discretion of the Managing Members, except as provided in § 13.3. A person acquiring an interest transferred shall be admitted to the Company as a Substitute Member.

**Section** 13.2 <u>Nonconsent Transfers</u>. Any purported transfer of Units not m compliance with § 13.1 shall be null and void, regardless of any notice provided to the Company, and shall not obligate the Company to the purported transferee, nor shall the Company be liable to any such transferee as a result of the purported transfer of interest. A person acquiring the interest transferred, without the receipt of the vote required by 13.1, shall not be entitled to admission to the Company as a Substituted Member. As a result, such person shall be entitled only to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred interests, which allocations and distributions may be applied (without limiting any other legal or equitable rights of the Company) to satisfy any debts, obligations, or liabilities from damages that the transferor or transferee of such interest may have to the Company. Any purported transfer of any economic benefits or interests of a Member's Unit without compliance with Section 13.1, regardless of any notice provided to the Company, shall be null and void and shall not obligate the Company to the purported transferee of any such economic benefits or interests.

In the case of a transfer or attempted transfer of interests that has not received the consent's required by Section 13.1, the parties engaging or attempting to engage in such transfer shall be liable to indemnify and hold harmless the Company and the other Members from all cost, liability, and damage that any of such indemnified persons may incur (including, without limitation, incremental tax liability and lawyers fees and expenses) as a result of such transfers or attempted transfer and efforts to enforce the indemnity granted hereby.

**Section 13.3** <u>Death or Bankruptcy of Managing Member; Other Termination or Transfer of Membership</u>.

       (a)    In the event of the death of a Managing Member who is an individual or if a court of competent jurisdiction adjudges a Managing Member who is an individual to be incompetent to manage his person or his property, followed by a decision by or on behalf of the remaining Managing Member who is an individual to continue the Company rather than allowing it to dissolve, the Managing Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights (including the transfer of the Units to a beneficiary) for purposes of settling his estate or administering his property. If a Managing Member is a corporation, limited liability company, trust or other entity and is dissolved or terminated, the powers of that Managing Member may be exercised by its legal representative or successor.

       (b)    In the event of bankruptcy or dissolution of a Managing Member, any successor to the Units of the affected Managing Member as a result thereof shall be deemed to be the transferee of the entire interest of the affected Managing Member and may be admitted as a Substitute Member.

**Section 13.4** <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrator, successors and assigns of the parties hereto.

# ARTICLE 14
## DISSOLUTION and WIND-UP

**Section 14.1** <u>Wind-Up</u>. Upon any event terminating the existence of the Company, the Company shall promptly commence to wind up its affairs.

**Section 14.2** <u>Authority to Wind-Up</u>. In the event that winding-up is required hereunder, the winding-up activities shall be managed by the Managing Members or a committee thereof appointed for this express purpose.

**Section 14.3** <u>Settlement and Distribution</u>. In settling accounts after dissolution, the assets of the Company shall be distributed in accordance with the applicable provisions of Maine Law.

**Section 14.4** <u>Termination</u>. Upon completion of the distribution of the Company's Property, the Company shall be terminated, and the Managing Members in charge of winding-up the Company's business shall cause the filing of the Articles of Dissolution and shall take all such other actions as may be necessary to terminate the Company.

**Section 14.5** <u>Claims of the Members</u>. The Members shall look solely to the Company's Property for the return of their Capital Contributions, and if the assets of the Company remaining after payment or discharge of the debts or liabilities of the Company are insufficient to return such Capital Contribution, the Members shall have no recourse against the Company or any other Member, Managing Member, Authorized Agent or other employee or agent.

# ARTICLE 15
## NOTICES

**Section 15.1** <u>Notices</u>. Any notice, payment, demand or communication required or permitted to be given hereunder shall be deemed to have been given when delivered personally to the party to be notified or when deposited in the United States mail, postage and charges prepaid, addressed as follows:

      (a)     if to the Company, addressed to the Company's principal office;

      (b)     if to a Member, addressed to such Member's address for purposes of notice which is contained in the Company's register of its Members. Any Member may change its address or representative to be notified by written notice to the Company.

**Section 15.2** If a Managing Member is a corporation (or other entity) represented by an authorized agent and such Managing Member intends to replace the present authorized agent, such Managing Member must provide written notification to the Company. Such written notification must include the name and address of both the present authorized agent and the authorized agent which the Managing Member intend to substitute in place of the present authorized agent. The substitution of a Managing Member's authorized agent shall not be effective until the Company receives said written notice.

## ARTICLE 16 GOVERNING
## LAW and INTERPRETATION

**Section 16.1** Governing Law. This Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of Maine.

**Section 16.2** Severability. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement shall not be affected and the application of such affected provisions shall be enforced to the greatest extent permitted by law.

**Section 16.3** Headings. All section or subsection titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the contest of this Agreement.

**Section 16.4** Plurals and Pronouns. All pronouns an any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

**Section 16.5** Time. In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall not be included, but the time shall begin to run on the next succeeding day. The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday or legal holiday.

Section 16.6 Method of Execution. The Agreement may be executed in counterparts (including telecopy or photocopy signature pages), no one of which need be executed by all parties, each of which, however, shall be deemed an original for all purposes, and all of which shall constitute but one and the same Agreement.

Section 16.7. If only one Managing Member is listed on Schedule 1, then (i) all references to multiple Managing Members in this agreement shall be deemed a reference to such single Managing Member; and (ii) any reference to an action by a majority of Managing Members shall be deemed a reference to action by such single Managing

Member.

This Agreement is executed as of the date first above mentioned.

Michael Shabsels, Member and Managing
Member

David Shabsels, Member and Managing Member

EXHIBIT 1

| | |
|---|---|
| Michael Shabsels<br>444 East 58th Street, #3C<br>New York NY 10022<br><br>Capital Contribution: $100<br>Units 100 | David Shabsels<br>212 E 48th Street, #8A<br>New York NY 10017<br><br>Capital Contribution, $100<br>Units 100 |
| | |

# AMENDMENT OF OPERATING AGREEMENTS

Pursuant to the respective operating agreements of each entity whose revised membership schedule is contained in Exhibit 1 annexed hereto, the Managers of each entity signing below consent to the Assignment and Assumption of Membership Interests dated as of December 2, 2025 and to the admission of the replacement Member (as such term is defined in each operating agreement). Each such entities' operating agreement is hereby amended by the replacement of the existing Exhibit 1 (or the relevant section containing the equity holdings) with the revised Exhibit 1 annexed hereto (or such relevant section).

For any of the operating agreements of any entity whose consent is found below which contain any reference to "SIMAD Holdings LLC" (a New York limited liability company), such reference is hereby amended to refer to SIMAD Holdings Ltd., a British Virgin Island company.

Effective as of the 2nd day of December 2025

**AGREED AND ACKNOWLEDGED:**

**BELGRADE LAKES SUMMER CAMPS LLC**

By: _____
Michael Shabsels, Manager

By: _____
David Shabsels, Manager

**BLUESTAR LANDCO, LLC**          **BLUESTAR OPERATINGCO, LLC**

By: _____          By: _____
Michael Shabsels, Manager            Michael Shabsels, Manager

By: _____          By: _____
David Shabsels, Manager              David Shabsels, Manager

**BELGRADE LAKES SUMMER CAMPS LLC**

**EXHIBIT 1**

SIMAD Holdings Ltd.,
a British Virgin Islands company

50 Quality Street, #110357
Trumbull, CT 06611

Capital Contribution:  $99.00

99% Owner
396 Units


DAMIS Holdings, LLC,
a New York limited liability company

50 Quality Street, #110357
Trumbull, CT 06611

Capital Contribution:  $1.00

1% Owner
4 Units

Filing Fee $50.00

**LIMITED LIABILITY COMPANY**

**STATE OF MAINE**

**CERTIFICATE OF AMENDMENT**
(for a Maine LLC)

File No. 20112547DC  Pages 3
Fee Paid $ 50
DCN     2143441600034  LNME
----FILED----------------------
12/09/2014

*Julie L Flynn*

Deputy Secretary of State

A True Copy When Attested By Signature

Deputy Secretary of State

SHABSELSIAFA, LLC
_____
(Name of Limited Liability Company)

Pursuant to 31 MRSA §1532, the undersigned limited liability company executes and delivers for filing this certificate of amendment:

**FIRST:**   The name of the limited liability company has been changed to (if no change, so indicate)

**BELGRADE LAKES SUMMER CAMPS LLC**
_____
(A limited liability company name must contain the words "limited liability company" or "limited company" or the abbreviation "L.L.C," "LLC," "L.C." or "LC" or, in the case of a low-profit limited liability company, "L3C" or "l3c." – see 31 MRSA 1508)

**SECOND:**   The date of filing of the initial certificate of formation: 03/14/2011 _____
                                                                                          (date)

**THIRD:**   Designation as a low profit LLC (**Check only if applicable**):

☐   This is a low-profit limited liability company pursuant to 31 MRSA §1611 meeting all qualifications set forth here:

    A.   The company intends to qualify as a low-profit limited liability company;

    B.   The company must at all times significantly further the accomplishment of one or more of the charitable or educational purposes within the meaning of Section 170(c)(2)(B) of the Internal Revenue Code of 1986, as it may be amended, revised or succeeded, and must list the specific charitable or educational purposes the company will further;

    C.   No significant purpose of the company is the production of income or the appreciation of property. The fact that a person produces significant income or capital appreciation is not, in the absence of other factors, conclusive evidence of a significant purpose involving the production of income or the appreciation of property; and

    D.   No purpose of the company is to accomplish one or more political or legislative purpose within the meaning of Section 170(c)(2)(D) of the Internal Revenue Code of 1986, or its successor.

Form No. MLLC-9 (1 of 3)

- 1 -                                                               Fri Dec 12 2014 09:28:33

**FOURTH:** Designation as a professional limited liability company (**Check only if applicable**)

☐ This is a professional limited liability company* formed pursuant to 13 MRSA Chapter 22-A to provide the following professional services:

_____

_____
(type of professional services)

**FIFTH:** Complete only if there is a change to the registered agent information.

The Registered Agent is a: (select **either** a Commercial or Noncommercial Registered Agent)

☐ Commercial Registered Agent         CRA Public Number: _____

_____
(Name of commercial registered agent)

☐ Noncommercial Registered Agent

_____
(Name of noncommercial registered agent)

_____
(physical location, not P.O. Box – street, city, state and zip code)

_____
(mailing address if different from above)

**SIXTH:** Pursuant to 5 MRSA §§105.2 or 108.3, the registered agent listed above has consented to serve as the registered agent for this limited liability company.

**SEVENTH:** Other changes this certificate of amendment makes to the certificate of formation as most recently amended or restated are set forth in Exhibit _____ attached and made a part hereof.

Fri Dec 12 2014 09:28:33

**\*\*Authorized person(s)**

_____ (Signature)

**Dated** December 9, 2014 _____

Robert Neault, Registered Agent
_____
(Type or print name and capacity)

_____ (Signature)

_____
(Type or print name and capacity)

---

\*Examples of professional service limited liability companies are accountants, attorneys, chiropractors, dentists, registered nurses and veterinarians. (This is not an inclusive list – see 13 MRSA §723.7)

\*\*Pursuant to 31 MRSA §1676.1, this Certificate of Amendment MUST be signed by a person authorized by the limited liability company.

The execution of this certificate constitutes an oath or affirmation under the penalties of false swearing under 17-A MRSA §453.

Please remit your payment made payable to the Maine Secretary of State.

Submit completed form to: **Secretary of State**
**Division of Corporations, UCC and Commissions**
**101 State House Station**
**Augusta, ME 04333-0101**
**Telephone Inquiries: (207) 624-7752** Email Inquiries: CEC.Corporations@Maine.gov

Form No. MLLC-9 (3 of 3) 7/1/2011

Fri Dec 12 2014 09:28:33

# REGISTER OF MEMBERS
## OF
## SIMAD HOLDINGS LTD.

**EXHIBIT**

**2**

06 June 2025

| NAME OF MEMBER | ADDRESS | DATE OF ENTRY AS MEMBER | DATE OF RESOLUTION APPROVING ISSUE/ TRANSFER OF SHARES | CERTIFICATE NUMBER | NUMBER OF SHARES ACQUIRED | CLASS OF SHARES | VOTING RIGHTS | SOURCE OF SHARES | AMOUNT PAID THEREON | DATE OF DISPOSSESSION OF SHARES | METHOD OF DISPOSSESSION OF SHARES | NUMBER OF SHARES DISPOSSESSED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Shabsels | 444 East 58th Street #3C, New York , New York , 10022, United States of America | 04 Jun 2025 | 04 Jun 2025 | No Certificate Issued | 500 | Ordinary | | Subscription | In Full | | | |
| **BALANCE OF SHARES** | | | | | | | | | | | | **Ordinary: 500** |
| David Shabsels | 60 Carthage Road, Scarsdale, New York , 10583, United States of America | 04 Jun 2025 | 04 Jun 2025 | No Certificate Issued | 500 | Ordinary | | Subscription | In Full | | | |
| **BALANCE OF SHARES** | | | | | | | | | | | | **Ordinary: 500** |

Maples Corporate Services (BVI) Limited
857353
Incorporation Number: 2177857

EXHIBIT

3

## AMENDED AND RESTATED
## OPERATING AGREEMENT
## OF
## DAMIS HOLDINGS, LLC

This Amended and Restated Operating Agreement ("Agreement") is made as of January 1, 2021, by the undersigned party or parties (individually and together, the "Members") pursuant to the provisions of the New York Limited Liability Company Law.

**WHEREAS,** the Members have formed a limited liability company pursuant to the New York Limited Liability Company Law.

**WHEREAS,** the Members desire to adopt this Agreement pursuant to the New York Limited Liability Company Law.

**WHEREAS,** each Member represents that he, her or it has sufficient right and authority, without breaching any provision of law or contract to execute this Agreement and is not acting on behalf of any undisclosed or partially disclosed principal by such action;

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Members hereby agree as follows:

### ARTICLE 1
### DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the following terms shall have the following meanings:

**Section 1.1** <u>Agreement</u>. This Amended and Restated Operating Agreement, dated as of January 1, 2021.

**Section 1.2** <u>Articles of Organization</u>. The Articles of Organization of the Company, which were filed with the New York State Department of State on March 31, 2009.

**Section 1.3** <u>Assignee</u>. A transferee of some or all of the Units of a Member, who has not been admitted as a Substitute Member.

**Section 1.4** <u>Authorized Agent</u>. As defined in Section 6.5 of this Agreement.

**Section 1.5** <u>Capital Contribution</u>. As defined in Section 4.2 of this Agreement.

**Section 1.6** <u>Code</u>. The Internal Revenue Code of 1986, as amended from time to time.

**Section 1.7** <u>Company</u>. DAMIS HOLDINGS, LLC, a limited liability formed under the laws of the State of New York, and any successor limited liability company.

1

**Section 1.8** <u>Company Property</u>. Any property owned by the Company.

**Section 1.9** <u>Department of State</u>. Department of State of the State of New York.

**Section 1.10** <u>Distribution</u>. A transfer of Company Property to a Member.

**Section 1.11** <u>Initial Members</u>. Those person(s), identified in Exhibit 1 attached hereto and made a part hereto by this reference, who have executed this Agreement.

**Section 1.12** <u>Majority</u>. A number or amount exceeding fifty percent (50%).

**Section 1.13** <u>Managers</u>. Michael Shabsels and David Shabsels, or the survivor in the case of death, disability, removal or resignation who have been given exclusive authority to manage, control and operate the Company.

**Section 1.14** <u>Members</u>. Any parties holding Units representing limited liability company interests in the Company, including Initial Members, Substitute Members and Additional Members.

**Section 1.15** <u>New York Act</u>. The New York Limited Liability Company Law.

**Section 1.16** <u>Substitute Member</u>. An Assignee of all or a portion of a Member's Units, who has become a Member pursuant to Article 13 of this Agreement.

**Section 1.17** <u>Units(s)</u>. An interest, or interests, in the Company held by a Member.

## ARTICLE 2
## ORGANIZATION AND TERM

**Section 2.1** <u>Formation</u>. The Members have caused the Company to have been formed under and pursuant to the provisions of the New York Act and upon the terms and conditions set forth in this Agreement.  The rights and liabilities of the Members shall be as provided under the New York Act, the Articles of Organization and this Agreement. The fact that the Articles of Organization are on file in the New York Department of State shall be conclusive evidence of the formation of the Company as a limited liability company. Simultaneously with the execution of this Agreement and the formation of the Company, each of the Members shall be admitted as Members of the Company.

**Section 2.2** <u>Name</u>. The Company's name shall be:

DAMIS HOLDINGS, LLC

The Company shall cause appropriate trade name and like statements to be filed and published under the name set forth in this Section 2.2, or such other name as the Company may have or use in any state or jurisdiction from time to time.

**Section 2.3** <u>Term</u>. The term of the Company shall commence on or prior to the date hereof and shall continue in full force and effect in perpetuity unless sooner terminated in accordance herewith or the New York Act.

**Section 2.4** <u>Principal Place of Business</u>. The principal place of business of the Company shall be 275 Main Street, Westhampton Beach, New York 11978.  Upon notice to the Members, the Company may change the location of its principal place of business. The following items shall at all times be maintained at the Company's principal office:

        (a)     a copy of this Agreement;

        (b)     a current list of the full name and last known business, residence, or mailing address of each Member, both past and present;

        (c)     a copy of the Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

        (d)     copies of the Company's federal, state and local income tax returns and reports, if any, for the three (3) most recent years;

        (e)     a statement prepared and certified as accurate by the Managers which describes the number of Units held by each Member of the Company; and

        (f)     all minutes of meetings of members and any written consents obtained from Members regarding action taken by Members without a meeting.

Such records are subject to inspection and copying at the reasonable request and at the expense of any Member during ordinary business hours.

**ARTICLE 3**
**PURPOSE AND POWERS OF THE COMPANY**

**Section 3.1** <u>Purpose</u>. The purpose of the Company is (1) to invest in various businesses including, without limitation, entities which own or lease real property in New York and other states, and/or operate summer camps on such premises, or conduct other business activities on such premises; and (2) to engage in any other lawful business purpose or purposes, except to do, in New York or in any other state, any business for which a statute other than the New York Act, specifically requires some other business entity or natural person to be formed or used for such purpose.

**Section 3.2** <u>Powers of the Company</u>. Insofar as the Company is acting in furtherance of the purpose of the Company as set forth in Section 3.1, the Company shall have the power and authority to take in its name all actions necessary, useful or appropriate in the Managers' discretion

to accomplish its purpose, including, but not limited to, the power to conduct its business, carry on its operation and have and exercise the powers granted by the New York Act in any state, territory, district or possession of the United States, or in any foreign country which may be necessary or convenient to effect any or all of the purposes for which it is organized.

## ARTICLE 4
## CAPITAL CONTRIBUTIONS, UNITS, VOTING AND CLASSES

**Section 4.1** <u>Initial Members</u>. The names and addresses of the Initial Members are set forth on Exhibit 1 attached hereto.

**Section 4.2** <u>Capital Contributions</u>. The initial Capital Contribution of each Member is set forth on Exhibit 1. No Member shall be liable under a judgment, decree or order of a court, or in any other manner for a debt, obligation or liability of the Company. Additionally, no Member shall be required to lend any funds to the Company or to pay any contributions, assessments or payments to the Company, and the advancing of any loans by any Member to the Company, which shall be extended by such Member in his, her or its sole discretion, shall not be deemed to require any other Member to extend any loans to the Company.

**Section 4.3** <u>Units</u>. A Member's interest in the Company shall be represented by a "Unit" or "Units" held by such Member. Initially, the Company shall have 400 Units outstanding. Each Unit shall represent a *pro rata* share in the profits and losses of the Company. Each Member's respective Units in the Company are set forth on Exhibit 1. Each Member hereby agrees that its interest in the Company and in its Units shall for all purposes be deemed a personal interest and shall not be deemed realty or any interest in the Company's real or personal property or assets of any kind.

**Section 4.4** <u>Withdrawals and Interest</u>. No Member shall have the right to:

    (a)    withdraw his, her or its Capital Contribution;

    (b)    receive any return or interest on any portion of his, her or its Capital Contribution except as otherwise provided herein; or

    (c)    withdraw from the Company except by transfer of his, her or its Units to another party in accordance with Article 13 of this Agreement, by resignation, or upon the dissolution of the Company.

**Section 4.5** <u>Return</u>. No Member shall be entitled to the return of all or any part of its Capital Contribution unless and until there remains Company Property after:

    (a)    all liabilities of the Company (except liabilities to Members on account of their Capital Contributions) have been paid or adequately provided for by the Company;

(b) all amounts due to Members in respect of their share of profits and other gains have been paid; and

(c) the Company has been dissolved without reformation in accordance with Article 14 of this Agreement, and Articles of Dissolution has been filed with the Department of State of New York.

**Section 4.6** Voting. By the execution of this Agreement, each Member hereby agrees that his, her or its votes, consents and actions pursuant to this Agreement shall be determined as provided in this Agreement. Unless otherwise specified in this Agreement, each Unit shall be entitled to one vote which shall be cast in proportion to his, her or its percentage ownership, as set forth on Exhibit 1 attached hereto. For actions requiring the approval of the Members, a Majority of Units voting in favor of such action shall be required to approve any action. Whenever in this Agreement it is provided that any action may be taken upon a vote of the Members such action may be taken by consent of the Members. By execution of this Agreement, each Member hereby votes to elect Michael Shabsels and David Shabsels as the Managers.

## ARTICLE 5
## RIGHTS AND POWERS OF MEMBERS

**Section 5.1** Powers of Members. The powers of the Members (as exercisable by the Managers) shall include, but not be limited to:

(a) the right and power to elect and remove a Manager as provided in Article 6 of this Agreement, except that as long as Michael Shabsels and David Shabsels (or the survivor in the case of death, disability, removal or resignation) are Members, they shall remain as Managers;

(b) the power to amend the Articles of Organization and this Agreement, provided that such amendment complies with the New York Act and Article 7 of this Agreement, except that as long as Michael Shabsels and David Shabsels are Members, they shall remain as Managers;

(c) as provided in Articles 12 and 13 of this Agreement, the power to approve or disapprove the admission of a transferee of some or all of a Member's Units as a Substitute Member;

(d) the power to approve the sale, exchange or other disposition of eighty percent (80%) or more of the Company's assets when such sale, exchange or other disposition is, or is part of, a single transaction or plan; and

(e) the power to dissolve the Company by the approval of the Members.

**Section 5.2** Transactions Between a Member and the Company. Except as otherwise provided by applicable law, any Member may, but shall not be obligated to, lend money to the Company, act as

surety for the Company and transact other business with the Company and exercise the same rights and obligations when transacting business with the Company as a person or entity who is not a Member.

**Section 5.3** <u>Nonrestriction of Business Pursuits of Members</u>. This Agreement shall not preclude or limit in any respect the right of any Members to engage in or invest in any business activity. Any permitted activity may be engaged in independently or with other Members. No Member shall have the right, by virtue of this Agreement or the relationship created hereby, to any interest of any other Member in such other ventures or activities, or to the income or proceeds derived therefrom. The pursuit of such ventures shall not be deemed wrongful or improper and any Member shall have the right to participate in or to invite the participation of others in any business activity.

**Section 5.4** <u>Partition</u>. Each Member hereby agrees and waives his, her or its rights to have the Company or any of the Company Property partitioned, or to file a complaint or to institute any suit, action or proceeding at law or in equity to have any Company Property partitioned, and each Member, on behalf of himself, herself or itself, and each of their respective successors or assigns, hereby waives any such right.

**ARTICLE 6**
**MANAGEMENT**

**Section 6.1** <u>Managers</u>. The management of the Company's business shall be vested in the Managers, Michael Shabsels and David Shabsels.

**Section 6.2** <u>Term of Office as a Manager</u>. Each Manager shall serve until the earliest of:

      (a)      the disability or death of such Manager; or

      (b)      the resignation or removal of such Manager.

**Section 6.3** <u>Authority of Managers to Bind the Company</u>. The Members hereby agree that either of the Managers, acting singly, shall have the authority to bind the Company.

**Section 6.4** <u>Powers of the Managers</u>. The Managers shall have the right and authority to take all actions which the Managers deem necessary, useful or appropriate for the management and conduct of the Company's business. The powers of the Managers may be delegated by them to one or more of their number or an agent appointed by them from time to time and shall include, but not be limited to, the authority to:

      (a)      sign all instruments, contracts, agreements and other documents on behalf of the Company and execute the same in the name of the Company;

      (b)      institute, prosecute and defend any proceeding in the Company's name;

      (c)      sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of Company Property, in whole or in part;

(d)     conduct the Company's business, establish the Company's offices, and to exercise all the powers of the Company within or without the State of New York;

(e)     appoint employees and agents of the Company, define their duties and establish their compensation;

(f)     indemnify the Members, Managers, Company employees and other agents, or any other person;

(g)     empower an Authorized Agent with the authority to perform specific duties of the Managers;

(h)     waive or compromise any liability of a Member of the Company; and

(i)     exercise all powers of the Company and do all such lawful acts and things, except if such acts are required or directed to be exercised or done only by the Members, under the New York Act, the Articles of Organization or this Agreement.

**Section 6.5** <u>Appointment of Authorized Agent</u>. The Managers may at any time appoint an authorized agent (an "Authorized Agent") to take specific action on behalf of the Company. The Managers may empower the Authorized Agent with some or all rights and powers provided to the Managers.

**Section *6.6*** <u>Engagement in Other Business Activities</u>. The Managers and any Authorized Agent may engage in other business activities as permitted by Section 5.3 but shall be obliged to devote as much of his or her time to the Company's business as shall be reasonably required in light of the Company's business and objectives.

**Section 6.7** <u>Compensation of Managers</u>. Each Manager shall be reimbursed for all reasonable out-of-pocket expenses incurred in managing the Company, but the Managers shall not be entitled to any monetary compensation for their services on behalf of the Company.

**Section 6.8** <u>Permitted Expenses</u>. Each Manager is authorized to spend up to $50,000 for any expense or item necessary for the Company. Any expenses or other items costing above $50,000 shall need the consent of both Managers.

**Section 6.9** <u>Standard of Care</u>. The Managers and any Authorized Agent shall perform their duties in good faith, in a manner reasonably believed to be in the best interests of the Company, and with such care as an ordinarily prudent person in a similar position would use under similar circumstances. A person who so performs his duties shall not have any liability by reason of obeying, or having been, a Manager or the Authorized Agent of the Company. In discharging their duties, the Managers and Authorized Agent shall be fully protected in relying in good faith upon the records, statements, information, opinions, or reports of others as provided in the New York Act.

**Section 6.10** <u>Resignation of Managers</u>. A Manager may resign from the position of Manager at any time upon the earlier of: (i) sixty (60) days written notice to the Members; or (ii) the election and qualification of a replacement Manager, by a vote of a Majority of the Members.

**Section 6.11** <u>Vacancies</u>. Any vacancy occurring in the position of Manager may be filled by a person elected by a Majority of the Members.

## ARTICLE 7
## AMENDMENTS AND MEETINGS

**Section 7.1** <u>Amendments</u>. Any amendment to this Agreement shall be adopted and be effective as an amendment hereto if it receives the affirmative vote of a Majority of the Managers; <u>provided</u>, <u>however</u>, that no amendment to the provisions of Article 4 of this Agreement, this Section 7.1, Sections 8.1, 8.2 or 8.3, or Sections 12.1 or 12.2 of this Agreement, or which otherwise requires any Member to contribute monies or other consideration to the Company, or receive Distributions other than on a *pro rata* basis in accordance with the Members' respective percentage interests in Units, shall be effective unless it receives the unanimous affirmative vote of the Members.

**Section 7.2** <u>Meeting of the Members</u>. Meetings of the Members may be called by the Managers. The call shall state the location of the meeting and the nature of the business to be transacted. Notice of any such meeting shall be given to all Members not less than seven (7) days nor more than sixty (60) days prior to the date of such meeting. Members may vote in person or by proxy. Whenever the vote or consent of Members is permitted or required under this Agreement, such vote or consent may be given at a meeting of Members. Except as otherwise expressly provided in this Agreement, a Majority vote of the Members, as set forth in Section 4.6, shall be required to constitute the act of the Members.

## ARTICLE 8
## MEMBER ACCOUNTS, ALLOCATIONS AND DISTRIBUTIONS

**Section 8.1**     <u>Maintenance of Member Accounts</u>.

(x) A Member Account shall be established in the Company's books for each Member and transferee in accordance with the rules of Treasury Regulation §1.704-l(b)(2)(iv). Each Member Account shall be:

(i) increased by:

(a)     such Member's cash contributions;

(b)     the fair market value of the property contributed by such Member to the Company (net of liabilities securing such contributed property that the Company is considered to assume or take subject to); and

(c)     the amounts allocated to such Member for its share of the income and gain of the Company;

and

(ii)     decreased by:

(a)     the amounts allocated to such Member for such Member's share of the Company's losses and deductions;

(b)     the amount of money distributed to such member by the Company; and

(c)     the fair market value of the property distributed to such Member by the Company (net of liabilities securing such contributing property that such Member is considered to assume or take subject to).

(y) For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Member's Member Account, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes.

**Section 8.2** <u>Allocations of Net Profits and Net Losses</u>.

(a) Net profits earned by the Company shall be derived at by deducting all operating expenses from the gross income of the Company, as calculated at the end of each fiscal year, and shall be allocated to the Members as follows:

(i)     Except as otherwise provided herein, all items of net profits shall be allocated to the Members *pro rata* in proportion to their respective interests in the Units; <u>provided</u>, that the Managers shall have full discretion in allocating items of net profits with respect to the Units held by Michael Shabsels and David Shabsels, as between these two Members.

(ii)     Notwithstanding anything to the contrary contained in Section 8.2(a)(i), in the event a loan of a Member to the Company is treated as a loan subject to Code Section 7872, any income and deductions in connection therewith (arising from amounts that have not been actually paid) shall be allocated to the Member making such loan.

(b) Net losses shall be allocated to the Members as follows:

(i)     First, if any Member has a positive balance in his capital account (a "Positive Capital Account"), the net losses shall be allocated proportionately among the Members with Positive Capital Accounts in the same ratio that the balance of each such Member's Capital Account bears to the sum of the balance of the Positive Capital Accounts of all Members, until such Capital Accounts are reduced to zero; and

9

(ii)  Thereafter, the balance of such net losses shall be allocated to the Members *pro rata* in proportion to their respective interests in the Units; <u>provided</u>, that the Managers shall have full discretion in allocating items of net profits with  respect to the Units held by Michael Shabsels and David Shabsels, as between these two Members.

**Section 8.3** <u>Distributions</u>. The Company's net income shall be distributed *pro rata* to the Members on account of the Units held by such Members, at a time established by the Managers; <u>provided</u>, that the Managers shall have full discretion in making Distribution with respect to the Units held by Michael Shabsels and David Shabsels, as between these two Members.  Notwithstanding the foregoing, (a) the Managers shall have full discretion in determining whether or not to distribute any net income in any fiscal year and may elect to retain and accumulate funds in the Company for any Company purpose, including without limitation anticipated capital expenditures, and/or expend such funds to repay or prepay indebtedness of the Company and (b) in the event of the death of a Member, such Member's heirs, legatees and/or estate shall be entitled to receive all Distributions which would otherwise have been made to the deceased Member.

**Section 8.4** <u>Code Section 754 Election Adjustments</u>. To the extent an adjustment to the tax basis of any Company asset pursuant to Code §754(b) is required to be taken into account in determining Member Accounts, the amount of such adjustment to the Member Accounts shall be treated as an item of gain (if the adjustment increases the basis of the assets) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which his, her or their Member Accounts are required to be adjusted pursuant to such Treasury Regulation section.

## ARTICLE 9
### FISCAL YEAR, BOOKS AND RECORDS

**Section 9.1** <u>Books of Account and Records</u>. At all times during the term of the Company, the Company shall keep or cause to be kept at the Company's principal office, the items set forth in Section 2.4.

**Section 9.2** <u>Fiscal Year</u>. The fiscal year of the Company shall end on December 31 in each year except that the first year of the Company shall be that period (even if less than twelve months) beginning on the date of filing of the Articles of Organization and ending on the next following December 31 and the final year of the Company shall be that period beginning on the first day of such year and ending on the date of cancellation of the Articles of Organization.

## ARTICLE 10
### TAX MATTERS

**Section 10.1** <u>Tax Matters Manager</u>. A Manager shall be designated as the "tax matters partner" of the Company pursuant to §6231(a)(7) of the Code.  Such Manager, as "tax matters partner" shall take any action as may be necessary to cause Michael Shabsels to become a "notice partner" within the meaning of

§6231 of the Code and shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Internal Revenue Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business.

## ARTICLE 11
## MEMBERS' LIABILITY AND INDEMNITY

**Section 11.1** Members.

(a) No Member shall be liable under a judgment decree or order of a court, or in any other manner, for the debts, liabilities, or obligations of the Company. A Member shall have no liability to any other Member and/or the Company when acting pursuant to its authority granted pursuant this Agreement except to the extent such Member's acts or omissions constituted willful misconduct or gross negligence of such Member.

(b) If a Member has received the return of any part of his Capital Contribution in violation of this Agreement or the New York Act, such Member is liable to the Company for a period of three (3) years thereafter for the amount of the Capital Contribution wrongfully returned.

(c) If a Member has received the return in whole or in part of his Capital Contribution without violation of this Agreement or the New York Act, such Member is liable to the Company for a period of three (3) years therefore for the amount of the returned Capital Contribution, but only to the extent necessary to discharge the liabilities of the Company to those creditors who extended credit to the Company during the period of the Capital Contribution was held by the Company.

Any liability of a Member to the Company under this Article 11 can be waived or compromised pursuant to a majority vote of the Managers in accordance with Section 4.6. A Member who is subject to an obligation to repay any Capital Contribution to the Company as required by the Articles of Organization or this Agreement, must make such repayment on demand by the Company. No Member shall be liable to the Company, its creditors or any other Member with respect to any amounts paid to such Members in the form of profit sharing, loan repayment, interest, salary, wage, rental, royalty, fee or payment for value given which is not paid to such Member as a return of such Member's Capital Contribution.

**Section 11.2** Managers. The Managers do not in any way guarantee the return of any Member's Capital Contribution or a profit for the Members from the Company's business. The Managers shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture. Neither the Company nor any of the Members shall have any rights by virtue of the Articles of Organization, this Agreement or any applicable law in or to the other business ventures of the Managers or to the income, gains, losses, deductions and credits derived therefrom by the Managers.

**Section 11.3** <u>Company's Indemnification of Members. Managers, Employees or Agents</u>. Except as otherwise specifically provided in this Agreement, the Company shall indemnify its Members, Managers, employees and agents to the full extent permitted by law.

**Section 11.4** <u>Force Majeure</u>. Notwithstanding anything in this Agreement to the contrary, a Member shall not be liable (except for such Member's obligations to contribute or return its Capital Contribution under the New York Act or this Agreement) for any loss or damage to Company Property or operations caused by its failure to carry out any of the provisions of the Articles of Organization and/or this Agreement as a result of foreseeable or unforeseeable acts of God or incidents resulting from outside forces, whether or not beyond the control of such Member, such as strikes, labor troubles, riots, fires, weather, floods, acts of a public enemy, insurrections, breakdown or failure of machinery, acts, omissions or delays of governmental authorities and governmental laws, rules, regulations or orders.

**Section 11.5** <u>Waiver</u>. The failure of any Member to insist upon strict performance of a covenant or condition hereunder shall not be a waiver of its right to demand strict compliance therewith in the future.

## ARTICLE 12
## ADDITIONAL MEMBERS AND UNITS

**Section 12.1** <u>Additional Units</u>. By approval of the Managers, the Company may issue Additional Units by sale or other issuance to existing Members or other persons or entities (separately and together, "Additional Members"). Any such sale or other issuance of Company Units shall be made in accordance with the Articles of Organization and this Agreement. As a condition to such issuance, Additional Members acquiring such Units shall execute this Agreement and all other documents and instruments as the Company may require and shall become Members as regards such Units upon the date the last of such agreements are executed. The legal fees and costs associated with the preparation and filing of an amendment to the Articles of Organization to effectuate such admission, if necessary, and all other documents necessary to continue the Company's right to do business in the jurisdictions in which it is then doing business, shall be borne by the Company.

**Section 12.2** <u>Allocations</u>. Additional Units shall not be entitled to any retroactive allocation of the Company's income, gains, losses, deductions, credits or other matters of any kind; provided that Additional Units shall be entitled to their respective share of the Company's income, gains, losses, deductions, credits and other matters of any kind arising under contracts entered into before the effective date of the issuance of any Additional Units to the extent that such income, gains, losses, deductions, credits and other matters of any kind arise after such effective date. The Company's books may be closed at the time Additional Units are issued (as though the Company's tax year had ended) or the Company may credit to the Additional Units *pro rata* allocations of the Company's income, gains, losses, deductions, credits and other matters of any kind for that portion of the Company's fiscal year after the effective date of the issuance of the Additional Units.

## ARTICLE 13
## TRANSFERS

**Section 13.1** <u>Transfer Restrictions.</u> Other than transfers to a Member's estate, or to a trust for the benefit of immediate family members with respect to which the Member retains full legal title and voting power, each Member hereby agrees not to, directly or indirectly, sell, transfer, assign, endorse, mortgage, pledge, hypothecate, grant an option to any party to acquire, grant a security interest in or otherwise dispose of or encumber its Units or interest in the Company and any economic benefit therein except with the consent of the Managers, which consent may be given or withheld in the sole and absolute discretion of the Managers, except as provided in Section 13.3. A person acquiring an interest transferred shall be admitted to the Company as a Substitute Member.

**Section 13.2** <u>Nonconsent Transfers.</u> Any purported transfer of Units, or of any economic benefits or other interests in Units, not in compliance with Section 13.1 shall be null and void, regardless of any notice provided to the Company, and shall not obligate the Company to the purported transferee, nor shall the Company be liable to any such transferee as a result of the purported transfer of Units or any economic benefits or other interests therein. A person acquiring the interest transferred, without the receipt of the vote required by Section 13.1, shall not be entitled to admission to the Company as a Substitute Member. As a result, such person shall be entitled only to the transferor's rights to allocations and Distributions as provided by this Agreement with respect to the transferred interests, which allocations and Distributions may be applied (without limiting any other legal or equitable rights of the Company) to satisfy any debts, obligations, or liabilities from damages that the transferor or transferee of such interest may have to the Company. Any purported transfer of any economic benefits or interests of a Member's Unit without compliance with Section 13.1, regardless of any notice provided to the Company, shall be null and void and shall not obligate the Company to the purported transferee of any such economic benefits or interests.

In the case of a transfer or attempted transfer of interests that has not received the consent's required by Section 13.1, the parties engaging or attempting to engage in such transfer shall be liable to indemnify and hold harmless the Company and the other Members from all cost, liability, and damage that any of such indemnified persons may incur (including, without limitation, incremental tax liability and lawyers' fees and expenses) as a result of such transfers or attempted transfer and efforts to enforce the indemnity granted hereby.

**Section 13.3** <u>Death or Bankruptcy of Manager; Other Termination or Transfer of Membership</u>.

(a) In the event of the death of a Manager, the bankruptcy of a Manager, or if a court of competent jurisdiction adjudges a Manager to be incompetent to manage his person or his property, the remaining Manager shall assume all of the duties as Manager.

(b) In the event of the death of the "second to die" Manager, the bankruptcy of the surviving Manager, or if a court of competent jurisdiction adjudges both Managers (or the surviving Manager) to be incompetent to manage his person or his property, the executor, administrator, guardian, conservator, or other legal representative of the "second to die" or "surviving"

Manager may exercise all of the Manager's rights, until a success Manager is elected pursuant to the provisions of this Agreement.

Section 13.4 <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrator, successors and assigns of the parties hereto.

## ARTICLE 14
## DISSOLUTION AND WIND-UP

Section 14.1 <u>Wind-Up</u>. Upon any event terminating the existence of the Company, the Company shall promptly commence to wind up its affairs.

Section 14.2 <u>Authority to Wind-Up</u>. In the event that winding-up is required hereunder, the winding-up activities shall be managed by the Managers or a committee thereof appointed for this express purpose.

Section 14.3 <u>Settlement and Distribution</u>. In settling accounts after dissolution, the assets of the Company shall be distributed in accordance with the applicable provisions of New York Law.

Section 14.4 <u>Termination</u>. Upon completion of the Distribution of the Company's Property, the Company shall be terminated, and the Managers in charge of winding-up the Company's business shall cause the filing of applicable Articles of Dissolution and shall take all such other actions as may be necessary to terminate the Company.

Section 14.5 <u>Claims of the Members</u>. The Members shall look solely to the Company's Property for the return of their Capital Contributions, and if the assets of the Company remaining after payment or discharge of the debts or liabilities of the Company are insufficient to return such Capital Contribution, the Members shall have no recourse against the Company or any other Member, Manager, Authorized Agent or other employee or agent.

## ARTICLE 15
## NOTICES

Section 15.1 <u>Notices</u>. Any notice, payment, demand or communication required or permitted to be given hereunder shall be deemed to have been given when delivered personally to the party to be notified or when deposited in the United States mail, postage and charges prepaid, addressed as follows:

      (a)    if to the Company, addressed to 275 Main Street, Westhampton Beach, New York 11978, Attention: Mr. Michael A. Shabsels, with a copy by email to <u>mshabsels@gmail.com</u>, by United States mail to Mark S. Cohen, Esq., 338 Lester Court, West Hempstead, New York 11552 and by email to <u>mscohen18@gmail.com</u>;

(b)     if to a Member, addressed to such Member's address for purposes of notice which is contained in the Company's register of its Members. Any Member may change its address or representative to be notified by written notice to the Company.

Section 15.2 Replacement of Authorized Agent.  If a Manager is a limited liability company, corporation (or other entity) represented by an Authorized Agent and such Manager intends to replace the present Authorized Agent, such Manager must provide written notification to the Company. Such written notification must include the name and address of both the present Authorized Agent and the Authorized Agent which such Manager intends to substitute in place of the present Authorized Agent. The substitution of a Manager's Authorized Agent shall not be effective until the Company receives said written notice.

## ARTICLE 16
## GOVERNING LAW AND INTERPRETATION

Section 16.1 Governing Law. This Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of New York.

Section 16.2 Severability. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement shall not be affected and the application of such affected provisions shall be enforced to the greatest extent permitted by law.

Section 16.3 Headings. All section or subsection titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the contest of this Agreement.

Section 16.4 Plurals and Pronouns. All pronouns an any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

Section 16.5 Time. In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall not be included, but the time shall begin to run on the next succeeding day. The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday or legal holiday.

Section 16.6 Method of Execution. This Agreement may be executed in counterparts (including telecopy, "pdf" or photocopy signature pages), no one of which need be executed by all parties, each of which, however, shall be deemed an original for all purposes, and all of which shall constitute but one and the same Agreement.

Section 16.7 Amendment and Restatement. This Agreement amends and restates in its entirety that certain Operating Agreement of the Company dated as of January 1, 2013 (the "Original Agreement"). Upon the execution and delivery of this Agreement, the Original Agreement shall be deemed superseded by this Agreement for all purposes.

This Amended and Restated Operating Agreement of DAMIS HOLDINGS, LLC is executed as of the date first above mentioned.

_____
Michael Shabsels, Member


_____
David Shabsels, Member

EXHIBIT  1

David Shabsels
60 Carthage Road
Scarsdale, New York 10583

Capital Contribution:

$50.00
50% Owner
200 Units

Michael Shabsels
444 East 58th Street, Apt. 3-C
New York, New York 10022

Capital Contribution:

$50.00
50% Owner
200 Units